# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Civil Action No. _____

THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,

      Plaintiff,

v.

ELI LILLY AND COMPANY,

IMCLONE LLC and

BRISTOL MYERS SQUIBB COMPANY,

      Defendants.

---

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

---

Plaintiff, The Trustees of the University of Pennsylvania, by and through its attorneys, for its complaint against Defendants Eli Lilly and Company, ImClone LLC, and Bristol Myers Squibb Company, hereby allege as follows:

### THE PARTIES

1.    The Trustees of the University of Pennsylvania ("Penn") is a Pennsylvania corporation focused on higher education, research and patient care with a principal place of business of 3154 Walnut Street, Philadelphia, Pennsylvania 19104.

2. On information and belief, Defendant Eli Lilly and Company ("Lilly") is an Indiana corporation with a principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.

3. Lilly is registered to do business and has designated an agent for service of process in the Commonwealth of Pennsylvania.

4. On information and belief, Defendant ImClone LLC is a Delaware limited liability company with principal place of business at 111 Eighth Avenue, New York, New York 10011. On information and belief, ImClone LLC previously was known as ImClone Systems which, prior to June 15, 2009, changed its name to ImClone LLC. As used herein, ImClone Systems, Inc. and ImClone LLC shall be individually and collectively referred to as "ImClone". On information and belief, ImClone is a wholly owned subsidiary of Lilly.

5. On information and belief, Defendant Bristol Myers Squibb Company ("BMS") is a Delaware corporation with a principal place of business at 345 Park Avenue, New York, New York 10154.

6. BMS is registered to do business and has designated an agent for service of process in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

7. This is an action for patent infringement under 35 U.S.C. § 271 *et seq.*

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because all claims in this action arise under the patent laws of the United States.

9. This Court has personal jurisdiction over Lilly for at least the reasons set forth below. Lilly has committed acts of infringement in this District, including either directly, or through its subsidiaries, agents, and/or affiliates, by making, using, selling, or offering for sale, goods used in connection with performance of methods that infringe the patent-in-suit, and promoting the use of infringing methods. In addition, Lilly regularly does or solicits business, engages in other persistent courses of conduct, or derives revenue from goods and methods used or consumed by, and services provided to, persons in the Commonwealth of Pennsylvania and this judicial district. Accordingly, Lilly has minimum contacts with this forum such that the exercise of jurisdiction over Lilly would not offend traditional notions of fair play and substantial justice.

10. This Court has personal jurisdiction over ImClone for at least the reasons set forth below. On information and belief, ImClone maintains a presence in the Commonwealth of Pennsylvania and in this judicial district, including by at least employing personnel and by maintaining locations such as Investigational Sites in this judicial District. ImClone also has committed acts of infringement in this District, including either directly, or through its subsidiaries, agents, and/or affiliates, by making, using, selling or offering for sale goods used in connection with performance of methods that infringe the patent-in-suit, and promoting the use of infringing methods. In addition, ImClone regularly does or solicits business, engages in other persistent courses of conduct, or derives revenue from goods and methods used or consumed by, and services provided to, persons in the Commonwealth of Pennsylvania and this judicial district. Accordingly, ImClone has minimum contacts with this forum such that the exercise of

jurisdiction over ImClone would not offend traditional notions of fair play and substantial justice.

11. This Court has personal jurisdiction over BMS for at least the reasons set forth below. BMS has committed acts of infringement in this District, including either directly, or through its subsidiaries, agents, and/or affiliates, by making, using, selling, or offering for sale, goods used in connection with performance of methods that infringe the patent-in-suit, and promoting the use of infringing methods. In addition, BMS regularly does or solicits business, engages in other persistent courses of conduct, or derives revenue from goods and methods used or consumed by, and services provided to, persons in the Commonwealth of Pennsylvania and this judicial district. Accordingly, BMS has minimum contacts with this forum such that the exercise of jurisdiction over BMS would not offend traditional notions of fair play and substantial justice.

12. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400 at least because this Court has personal jurisdiction over one or more defendants, and infringement has occurred in this judicial district.

## BACKGROUND

13. Plaintiff Penn is a leader in the research, development and administration of cancer therapies and treatments of cancer patients. In particular, Penn's Abramson Cancer Center was founded in 1973 with the goal of transforming scientific breakthroughs into innovative cancer treatments. At Penn's Cancer Center, scientists, medical oncologists, pathologists, and surgeons work together on the complex steps of turning discoveries into treatments that will benefit cancer patients throughout the world.

14. On December 1, 2009, United States Patent No. 7,625,558 ("the '558 Patent") entitled "Compositions and Methods of Treating Tumors" was duly and legally issued by the United States Patent and Trademark Office (the "USPTO"). A copy of the '558 Patent is attached as Exhibit A.

15. Penn is the owner and assignee of all right, title, and interest in and to the '558 Patent.

16. The inventions of the '558 patent were invented by Drs. Mark Greene, Donald O'Rouke, Ramachandran Murali, and Byeong-Woo Park of the Perelman School of Medicine of the University of Pennsylvania. Drs. Greene and O'Rourke are still with Penn. Dr. Greene is Professor of Medical Science in the Department of Pathology and Laboratory Medicine at Penn's Perelman School of Medicine. Dr. O'Rourke is Associate Professor of Neurosurgery in the Department of Neurosurgery at Penn's Perelman School of Medicine.

17. Drs. Greene, O'Rouke, Murali, and Park developed therapies for treating erbB protein mediated cancer tumors by administering a compound, such as a peptide or antibody, that inhibits the formation of erbB protein dimers, followed by radiation. In particular, they made the surprising finding that administering a cytostatic antibody that inhibits tumor cell growth actually enhances subsequent administration of radiation in a synergistic manner. This order of administration was novel and not obvious at the time the invention was made, as it was commonly understood that radiation is mainly effective on dividing cells. Their efforts resulted in the inventions claimed in the '558 patent.

18. On information and belief, in September 2001, ImClone (which was then known as ImClone Systems, Inc.) and BMS entered into a commercial agreement to co-develop and co-promote an investigational cancer drug, Erbitux.

19. Erbitux is an erbB protein inhibitor, and is also known as Cetuximab. Specifically, Erbitux is antibody that inhibits dimerization of the epidermal growth factor receptor (EGFR).

20. On information and belief, under the commercial agreement, BMS was required to pay ImClone an aggregate of $1 billion upon the achievement of various milestones. On information and belief, the commercial agreement, although modified from time to time, is still effective between defendant ImClone and BMS.

21. On information in belief, in 2001, BMS purchased 14.4 million shares of ImClone for $70 per share, which at the time represented 19.9% of ImClone's shares outstanding.

22. On information and belief, ImClone first received FDA approval to administer Erbitux in 2004; and later in 2006, ImClone received FDA approval to administer Erbitux in combination with radiation for treatment of locally or regionally advanced squamous cell carcinoma of the head and neck ("SCCHN"). On information and belief, since at least as early as 2006, ImClone has manufactured, marketed, sold, and distributed Erbitux, including in the United States, and BMS has distributed and marketed Erbitux, including in the United States, for use in combination therapies, including administration of Erbitux followed by radiation for treatment of locally or regionally advanced SCCHN.

23. Direct infringement takes place at least when Erbitux is administered followed by radiation and, on information and belief, such administration is the only use of Erbitux in combination with radiation that the FDA has approved.

24. On information and belief, ImClone became a wholly owned subsidiary of Lilly in or about November 2008.

25. On information and belief, ImClone markets and/or distributes Erbitux to others, including marketing and/or distributing Erbitux to or through Lilly.

26. On information and belief, ImClone's revenue from sales of Erbitux in the United States represents a significant percentage of ImClone's total Erbitux revenue.

27. On information and belief, Lilly markets Erbitux in the United States, and Lilly sells Erbitux and distributes Erbitux to others.

28. On information and belief, Lilly's revenue from sales of Erbitux in the United States represents a significant percentage of Lilly's total Erbitux revenue.

29. On information and belief, BMS has purchased and purchases or otherwise has received and receives Erbitux directly or indirectly from Lilly, and BMS markets, sells and distributes Erbitux to others within the United States and Canada.

30. On information and belief, BMS has purchased and purchases or otherwise has received and receives Erbitux directly or indirectly from ImClone, and BMS markets, sells and distributes Erbitux to others within the United States and Canada.

31. On information and belief, BMS' annual revenue from sales of Erbitux in the United States is more than $600,000,000.

32. Erbitux is and has been marketed and sold in the United States with a label including instructions for its use (the "Erbitux Label & Instructions") as approved by the Food and Drug Administration ("FDA"). The Erbitux Label & Instructions include FDA-approved uses, including a combined therapy of administering Erbitux followed by radiation for treatment of locally or regionally advanced SCCHN. Examples of the dosing and administration instructions from the March 2015 Erbitux Label & Instructions are below:

--------------------DOSAGE AND ADMINISTRATION--------------------
- Premedicate with an $H_1$ antagonist. (2.3)
- Administer 400 $mg/m^2$ initial dose as a 120-minute intravenous infusion followed by 250 $mg/m^2$ weekly infused over 60 minutes. (2.1, 2.2)
- Initiate Erbitux one week prior to initiation of radiation therapy. Complete Erbitux administration 1 hour prior to platinum-based therapy with 5-FU (2.1) and FOLFIRI (2.2).
- Reduce the infusion rate by 50% for NCI CTC Grade 1 or 2 infusion reactions and non-serious NCI CTC Grade 3 infusion reaction. (2.4)
- Permanently discontinue for serious infusion reactions. (2.4)
- Withhold infusion for severe, persistent acneiform rash. Reduce dose for recurrent, severe rash. (2.4)

(at p. 1).

## 2 DOSAGE AND ADMINISTRATION

### 2.1 Squamous Cell Carcinoma of the Head and Neck

Erbitux in combination with radiation therapy or in combination with platinum-based therapy with 5-FU:

- The recommended initial dose is 400 $mg/m^2$ administered one week prior to initiation of a course of radiation therapy or on the day of initiation of platinum-based therapy with 5-FU as a 120-minute intravenous infusion (maximum infusion rate 10 mg/min). Complete Erbitux administration 1 hour prior to platinum-based therapy with 5-FU.

- The recommended subsequent weekly dose (all other infusions) is 250 $mg/m^2$ infused over 60 minutes (maximum infusion rate 10 mg/min) for the duration of radiation therapy (6–7 weeks) or until disease progression or unacceptable toxicity when administered in combination with platinum-based therapy with 5-FU. Complete Erbitux administration 1 hour prior to radiation therapy or platinum-based therapy with 5-FU.

(at p. 4).

33. Lilly's name and trademark are affixed to the Erbitux Label & Instructions.

34. On information and belief, Lilly develops, contributes content to, and approves the content of, the Erbitux Label & Instructions.

35. ImClone's name and trademark are affixed to the Erbitux Label & Instructions.

36. On information and belief, ImClone develops, contributes content to, and approves the content of, the Erbitux Label & Instructions.

37. On information and belief, BMS uses and provides the Erbitux Label & Instructions as part of BMS's marketing, sale, and distribution of Erbitux.

38. On information and belief, BMS develops, contributes content to, and approves the content of, the Erbitux Label & Instructions.

39. BMS's name and trademark are affixed to the Erbitux Label & Instructions.

40. On information and belief, each of ImClone, Lilly and BMS had pre-suit knowledge of the '558 patent. On information and belief, ImClone, Lilly and BMS have acted in concert with respect to making, using, promoting, selling and/or offering for sale Erbitux in the United States, and with respect to using and promoting in the United States infringing combination therapies that include Erbitux.

41. On June 28, 2006, United States Patent No. 6,417,168 ("the '168 Patent"), the parent of the '558 patent, was cited as a novelty destroying reference under 35 U.S.C. §102(e) in ImClone's U.S. Application Serial No. 10/661,881. This ImClone application contained claims directed to a combination therapy comprising administration of radiation and an EGFR inhibitor, and was later abandoned.

42. In 2007, ImClone, along with several third parties filed in the European Patent Office ("EPO") an opposition (the "EPO Opposition") opposing the issuance of Penn's European patent application (the "99908641.6 Application"). The 99908641.6 Application is a foreign counterpart to Penn's '168 and '558 U.S. patents. The 2007 EPO Opposition identifies priority applications for the 9908641.6 Application, including the application for the '558 patent's parent (US Application No. 111,681 which issued as the '168 Patent). On information and belief, each of ImClone and Lilly has known of the '558 patent since its issuance in December 2009, and Lilly has known of the '558 patent parent and family since at least about June 2009 when Eli Lilly Company Ltd, a wholly owned subsidiary of Lilly, became ImClone's authorized representative in the EPO Opposition.

43. On information and belief, BMS has monitored and monitors the status of patent-related disputes involving ImClone and Erbitux. On information and belief, BMS has known of the '558 patent since its issuance or shortly thereafter, and has known of the EPO Opposition and the '558 patent parent and family since 2007. In addition, prior to filing this Complaint, Penn attempted to enter into a license arrangement with Lilly whereby Lilly and ImClone would be licensed to practice the '558 patent. Penn and Lilly were not able to agree to license terms.

**FIRST CAUSE OF ACTION**
(Lilly's Infringement of the '558 Patent)

44. Penn incorporates by reference paragraphs 1 – 43.

45. On information and belief, Lilly develops, contributes to, and approves the Erbitux Label & Instructions for administering Erbitux followed by radiation for treatment of

-10-

erbB-mediated tumors. In addition, Lilly includes the Erbitux Label & Instructions with its Erbitux products.

46. On information and belief, Lilly indirectly infringes at least claims 1-7, 9-12, 14, 16, 17, 19-30, and 32-40 of the '558 Patent by, without authorization from Penn, actively encouraging, instructing and inducing others to use or practice in the United States infringing combination therapies, including administration of Erbitux followed by radiation for the treatment of erbB-mediated SCCHN tumors.

47. On information and belief, Lilly proceeded with its infringing activity after it knew of the '558 patent, and with specific intent to cause (or willful blindness to causing) infringement of the '558 patent by others who, in accord with the Erbitux Label & Instructions, administer Erbitux followed by radiation for the treatment of erbB mediated tumors.

48. On information and belief, Lilly proceeded with its infringing activity after it knew of the '558 patent and in the face of an objectively high likelihood that its activity is an unlawful infringement.

49. Penn has suffered damages as a result of Lilly's infringement of the '558 Patent, and will suffer additional damages as a result of Lilly's continuing infringement.

### SECOND CAUSE OF ACTION
(ImClone's Infringement of the '558 Patent)

50. Penn incorporates by reference paragraphs 1 – 49.

51. On information and belief, ImClone develops, contributes to, and approves the Erbitux Label & Instructions for administering Erbitux followed by radiation for treatment of

erbB-mediated tumors. In addition, ImClone includes the Erbitux Label & Instructions with its Erbitux products.

52. On information and belief, ImClone indirectly infringes at least claims 1-7, 9-12, 14, 16, 17, 19-30, and 32-40 of the '558 Patent by, without authorization from Penn, actively encouraging, instructing and inducing others to use or practice in the United States infringing combination therapies, including administration of Erbitux followed by radiation for the treatment of erbB-mediated SCCHN tumors.

53. On information and belief, ImClone proceeded with its infringing activity after it knew of the '558 patent, and with specific intent to cause (or willful blindness to causing) infringement of the '558 patent by others who, in accord with the Erbitux Label & Instructions, administer Erbitux followed by radiation for the treatment of erbB mediated tumors.

54. On information and belief, ImClone proceeded with its infringing activity after it knew of the '558 patent and in the face of an objectively high likelihood that its activity is an unlawful infringement.

55. Penn has suffered damages as a result of ImClone's infringement of the '558 Patent, and will suffer additional damages as a result of ImClone's continuing infringement.

### THIRD CAUSE OF ACTION
(BMS Infringement of the '558 Patent)

56. Penn incorporates by reference paragraphs 1 – 55.

57. On information and belief, BMS develops, contributes to, and approves the Erbitux Label & Instructions for administering Erbitux followed by radiation for treatment of

erbB-mediated tumors. In addition, BMS includes the Erbitux Label & Instructions with its Erbitux products.

58. On information and belief, BMS indirectly infringes at least claims 1-7, 9-12, 14, 16, 17, 19-30, and 32-40 of the '558 Patent by, without authorization from Penn, actively encouraging, instructing and inducing others to use or practice in the United States infringing combination therapies, including administration of Erbitux followed by radiation for the treatment of erbB-mediated SCCHN tumors.

59. On information and belief, BMS proceeded with its infringing activity after it knew of the '558 patent, and with specific intent to cause (or willful blindness to causing) infringement of the '558 patent by others who, in accord with the Erbitux Label & Instructions, administer Erbitux followed by radiation for the treatment of erbB-mediated tumors.

60. On information and belief, BMS proceeded with its infringing activity after it knew of the '558 patent and in the face of an objectively high likelihood that its activity is an unlawful infringement.

61. Penn has suffered damages as a result of BMS's infringement of the '558 Patent, and will suffer additional damages as a result of BMS's continuing infringement.

## DEMAND FOR RELIEF

WHEREFORE, PENN respectfully requests the following relief:

a) That this Court adjudge and decree that Lilly has been and is currently infringing the '558 patent;

b) That this Court order Lilly to pay damages to Penn to compensate it for each of the unlawful actions set forth in Penn's Complaint;

c) That this Court determine that Lilly's infringement is willful and award Penn enhanced damages for such infringement;

d) That this Court adjudge and decree that ImClone has been and is currently infringing the '558 patent;

e) That this Court order ImClone to pay damages to Penn to compensate it for each of the unlawful actions set forth in Penn's Complaint;

f) That this Court determine that ImClone's infringement is willful and award Penn enhanced damages for such infringement;

g) That this Court adjudge and decree that BMS has been and is currently infringing the '558 patent;

h) That this Court order BMS to pay damages to Penn to compensate it for each of the unlawful actions set forth in Penn's Complaint;

i) That this Court determine that BMS's infringement is willful and award Penn enhanced damages for such infringement;

j) That this Court award pre-judgment and post-judgment interest on each such damages award to Penn and order an accounting of damages that accrue between the close of fact discovery and the date a final judgment is entered in this litigation;

k) That this Court determine that this patent infringement case is exceptional and award Penn its costs and attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285; and

l) That this Court award such other relief as the Court deems just and proper.

Dated: November 13, 2015

Respectfully submitted,

*Wendy S. White*

Wendy S. White (PA Bar I.D. No. 84958)
UNIVERSITY OF PENNSYLVANIA &
PENN MEDICINE
133 South 36th Street
Philadelphia, PA 19104
Telephone: 215-746-5240
Facsimile: 215-756-5301/5222

Of Counsel:
Jonathan G. Graves
jgraves@cooley.com
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: 703 456 8119
Facsimile: 703 456 8100

DeAnna Allen
dallen@cooley.com
1299 Pennsylvania Ave, NW
Suite 700
Washington, DC 20004-2400
Telephone: 202-842-7896
Facsimile: 202 842 7899

*Attorneys for Plaintiff, The Trustees of the University of Pennsylvania.*

# DEMAND FOR JURY TRIAL

Penn respectfully requests a trial by jury on all issues triable thereby.

Dated: November 13, 2015

Respectfully submitted,

*/s/ Wendy S. White*

Wendy S. White (PA Bar I.D. No. 84958)
UNIVERSITY OF PENNSYLVANIA &
PENN MEDICINE
133 South 36th Street
Philadelphia, PA 19104
Telephone: 215-746-5240
Facsimile: 215-756-5301/5222

Of Counsel:
Jonathan G. Graves
jgraves@cooley.com
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: 703 456 8119
Facsimile: 703 456 8100

DeAnna Allen
dallen@cooley.com
1299 Pennsylvania Ave, NW
Suite 700
Washington, DC 20004-2400
Telephone: 202-842-7896
Facsimile: 202 842 7899
*Attorneys for Plaintiff, The Trustees of the University of Pennsylvania.*

123897699 v1

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
The Trustees of the University of Pennsylvania

### DEFENDANTS
Eli Lilly and Company, Imclone LLC, and Bristol Myers Squibb Company

(b) County of Residence of First Listed Plaintiff    Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Marion County, IN &
*(IN U.S. PLAINTIFF CASES ONLY)* New York County, NY
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Wendy S. White, Office of the Sr. Vice President and General Counsel, University of Pennsylvania, 133 South 36th St., Philadelphia, PA 19104
215-746-5240

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U S Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
35 USC §§ 100, et seq.
Brief description of cause
Patent Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  11/12/2015

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: University of Pennsylvania 3154 Walnut Street Philadephia PA 19104

Address of Defendant: Eli Lilly Lilly Corporate Center Indianapolis, IN 46285; Imclone LLC 111 Eighth Ave New York, NY 10011; Bristol Myers Squibb Company 345 Park Ave, New York, NY 10154

Place of Accident, Incident or Transaction: Nationawide, including the Eastern District of Pennsylvania

(*Use Reverse Side For Additional Space*)

---

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐ No☒

Does this case involve multidistrict litigation possibilities?    Yes☐ No☒

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐ No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☒ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

---

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Wendy S. White , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 11/15/2015    _____    84958
                    Attorney-at-Law     Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/12/2015    _____    84958
                    Attorney-at-Law     Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| The Trustees of the University of Pennsylvania | : | CIVIL ACTION |
| v. | : | |
| Eli Lilly and Company, Imclone LLC, and Bristol Myers Squibb Company | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| November 12, 2015 | Wendy S. White /s/ | The Trustees of the University of Pennsylvania |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-746-5240 | 215-746-5301 | wendy.white@ogc.upenn.edu |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02