IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>    Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br>IMCLONE LLC, and<br>BRISTOL-MYERS SQUIBB COMPANY,<br><br>    Defendants. | Civil Action No. 2:15-cv-06133-WB |

**ORDER GOVERNING ELECTRONIC DISCOVERY**

AND NOW, this day of 1st day of February, 2016, in anticipation of the Rule 16 conference, it is **ORDERED** as follows:

1. **Introduction**. The Parties will work to reach agreements co-operatively on how to conduct discovery and will endeavor not to request the Court's assistance in resolving any discovery disputes including disputes over electronic discovery. In the event that the Parties are in disagreement about a discovery issue, they will meet and confer in an effort to resolve the dispute prior to contacting the Court for resolution.

2. **Exchange of e-discovery materials**. On February 1, 2016, the parties shall exchange the following information:

    a.   a list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities;

b. a list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system;

c. other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility, that is, those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost;

d. the name of the individual responsible for the party's electronic document retention policies ("the retention coordinator");

e. a general description of the party's electronic document retention policies;

f. the name of the individual who shall serve as the party's "e-discovery liaison;" and,

g. a description of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above issues by the time of the Rule 26(f) conference, the parties shall agree on a date by which this information will be mutually exchanged and provide that date to the Court in their joint Rule 16 conference submission.

3. **E-discovery conference**. The parties shall discuss the parameters of their anticipated e-discovery at the Rule 26(f) conference and will be prepared to address e-discovery at the Rule 16 conference with the Court.

4. **E-discovery liaison**. The e-discovery liaison for Plaintiff Trustees of the University of Pennsylvania shall be identified pursuant to Paragraph 2(f). The e-discovery

2

liaisons for Defendants Eli Lilly and Company and ImClone LLC shall be John Martin and Heyward Bonyata of the law firm of Nelson Mullins Riley & Scarborough LLP. The e-discovery liaison for Defendant Bristol-Myers Squibb Company shall be Gemma Golden. The parties agree to work in good faith to schedule e-discovery conferences when the e-discovery liaisons are available.

5. **Search methodology**. If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. Any requests for information expected to be found in limited accessibility documents must be narrowly focused with a factual basis supporting the request. Once a search protocol has been agreed to, if a requesting Party seeks electronically stored information ("ESI") from any other sources, the parties agree to meet and confer in good faith regarding production from those other sources. To minimize the expense, the parties may consider limiting the scope of the electronic search (*e.g.*, time frames, fields, document types). On-site inspections of electronic media under Federal Rule of Civil Procedure 34(b) shall not be permitted, absent exceptional circumstances where good cause and specific need have been demonstrated.

6. **De-Duplication**. The parties shall make reasonable efforts to de-duplicate ESI. ESI may be de-duplicated vertically within each custodian or horizontally across custodians. All ESI will be de-duplicated using MD5 or SHA1 Hash values. All files bearing an identical MD5 or SHA1 Hash value are a duplicate group. For purposes of this paragraph, only email messages

in which the parent document and all attachments are exactly the same will be considered duplicates. The parties may produce one document image for duplicate ESI documents within the duplicate group.

7. **Production of Email.**

a. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

b. Email production requests shall identify the custodian, search terms, and time frame. Each party shall use good faith efforts to identify the custodians, search terms and time frames applicable to its email production requests. The parties shall meet and confer within seven [7] days after exchange of their respective initial disclosures to identify reasonable limits on the number of custodians per producing party to whom email production requests may be made. Once this initial limit is agreed upon, the parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

c. Each requesting party shall limit its email production requests to an as yet to be decided number of search terms per custodian per party. The parties shall meet and confer within seven [7] days after exchange of their respective initial disclosures to identify reasonable limits on the number of search terms. Once this initial limit is agreed upon, the parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular

4

issues. Indiscriminate terms are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

    d. In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used in this Order, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Duplicative emails suppressed under this paragraph need not be reflected on the party's privilege log, as further discussed in paragraph 9.

    e. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

  8. **Production Format**.

    a. <u>General Provisions</u>. All documents, whether paper or electronic documents, shall be produced to the requesting party as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images, with searchable text provided in document level text files, with a load file that references the images and text, and a .DAT file with delimiters that list the metadata fields below. Image reference load files will be provided in .LFP, .OPT and .DII formats. After production in this format is received, the parties will meet and confer regarding

any good faith request for the production of ESI in native file format. A party may make a good faith request that a document produced in black-and-white be re-produced in color, and the parties will meet and confer regarding such a request. A party seeking production of electronic documents in their native format, or seeking documents in color, must demonstrate particularized need for those documents.

    b.  Parent-Child Relationships. Parent-child relationships (the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email record. If an email attachment is privileged, not responsive, or has a technical issue, a slip sheet may be inserted in the production.

    c.  Dynamic Fields. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

    d.  Non-Standard Files. Non-standard electronic files, include, but are not limited to, source code, transactional data, database files, audio and video files, and proprietary applications not publicly available. Upon request and demonstration of need, the parties will meet and confer as to a reasonable production format for such files.

    e.  Time Zone. Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Eastern Time. The parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and

times that are typed as such by users) will be produced as part of the document text in accordance with the load file formats, below.

  f. <u>Bates Numbering</u>. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will (i) be consistent across the production; (ii) contain no special characters; (iii) be numerically sequential within a given document; and (iv) will identify the producing party. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

  g. <u>Metadata to be Produced</u>. The following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI; that do not exist as part of the original metadata of the document; or would be burdensome or costly to obtain.

   i. BeginDoc

   ii. EndDoc

   iii. BegAttach

   iv. EndAttach

   v. Author

   vi. CC

   vii. TO

   viii. BCC

  ix.  File Extension

  x.  File Name

  xi.  Confidentiality

  xii.  Custodian (for documents collected from an archive, the name of the archive will be listed)

  xiii.  Date (date sent for email, last modified date for electronic documents, date displayed on hard copy documents)

  xiv.  Subject (for emails)

  xv.  Text

  h. <u>Production Media</u>. The producing party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface). Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production as well as the sequence of the material in that production.

  i. <u>Encryption</u>. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

9. **Privileged Information.**

  a. There is no duty to disclose privileged documents or information. The parties shall exchange privilege logs within ninety (90) days of production identifying the documents or information and the basis for any disputed claim of privilege in a manner that,

8

without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection.

      b.    No Party need list on a privilege log:

           i.    Documents generated after June 1, 2015.

           ii.    Redacted documents need not be logged as long as (a) for emails, the bibliographic information (*i.e.*, to, from, cc: and bcc: recipients, date, and time) is not redacted, and the reason for the redaction is noted on the face of the document in the redaction box; and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redaction box. Upon request, made on an individualized basis as to particular redacted documents, and within reason, the producing Party will provide log entries for such particular redacted documents in the manner set out herein.

      c.    An email thread may be logged in a single entry;

      d.    Documents that are presumptively privileged need not be logged. These are:

           i.    Internal communications within (a) a law firm, (b) a legal assistance organization, (c) a governmental law office or (d) a legal department of a corporation or of another organization.

           ii.    Communications solely between outside counsel and in-house counsel.

      e.    A party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

f. After the receipt of a privilege log, any party may dispute a claim of privilege, however, prior to any submission to the Court for an in camera review, the party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons (including legal support) for its assertion that the documents are not privileged. Within thirty (30) days, the party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support). The parties will then meet and confer in good faith as to the claims of privilege. If agreement cannot be met after thirty days, any party may thereafter submit the Discovery Material under seal to the Court for a determination as to privilege.

g. Inadvertent production of documents or ESI ("materials") subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery, shall not constitute a waiver of the immunity or privilege. The party discovering the inadvertent production will contact the opposing party to apprise them of such production within five court days of such discovery. The party in possession of the produced materials shall return the materials to the producing party, along with any notes or other work product reflecting the contents of such materials. Alternatively, upon request of the producing party, the party discovering the production shall destroy such materials and provide an affidavit to the producing party to that effect. In either event, all material shall be deleted from any litigation-support or other database. If, however, the party in possession of the materials believes that the materials are not subject to the protections of the attorney-client privilege or work product doctrine, the party in possession of the materials will contact the Court and opposing counsel within five court days of the discovery for an in-camera review of the materials in question. No use shall be made of such materials during depositions or at trial, nor shall they be disclosed to anyone who was not

given access to them before the request to return or destroy. Any party requesting an in camera inspection shall confer with opposing counsel before making any such request.

        h.      The parties agree that employing electronic keyword searching to identify and prevent disclosure of privileged material constitutes "reasonable steps to prevent disclosure" under Federal Rule of Evidence 502(b)(2).

        i.      Pursuant to Federal Rule of Evidence 502(d) and (e), the production of any discovery material by any party, whether inadvertent or not, shall be without prejudice to any subsequent claim by the producing party that such discovery material is privileged or attorney-work product, and shall not be deemed a waiver of any such privilege or protection in either the litigation pending before the court, or any other federal or state proceeding.

10. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

11. **Material Not Reasonably Accessible.** Absent a showing of good cause, voicemails, instant messages, and data from mobile devices are deemed not reasonably accessible and need not be collected and preserved.

12. **Authenticity and Admissibility.** Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

13. **Confidential Information**. For the avoidance of doubt, nothing herein shall contradict the parties' rights and obligations with respect to any document or data designated as confidential, as governed by the Protective Order regarding the protection of such information.

14. **Costs**. Generally, the costs of discovery shall be borne by each party. However, the court may apportion the costs of electronic discovery upon a showing of good cause.

BY THE COURT:

_____
**WENDY BEETLESTONE, J.**