**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA,

    Plaintiff,

    v.

ELI LILLY AND COMPANY,
IMCLONE LLC, and
BRISTOL-MYERS SQUIBB COMPANY,

    Defendants.

Civil Action No. 2:15-cv-06133-WB

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

    As Defendants explained in their opening brief (D.I. 23-2), all three factors that this

Court considers when deciding a motion to stay pending *inter partes* review—the prejudice to

the patentee, the potential for simplifying the issues, and the state of the litigation—weigh in

favor of a stay.  Penn has offered nothing to the contrary.  *First*, Penn has not identified any

prejudice that would result from a stay.  *Second*, although Penn claims that a stay would not

simplify the case, its argument relies on an incorrect statement of the law and in any event

ignores the history of the '558 patent.  *Third*, Penn cannot seriously dispute that the early stage

of this litigation favors a stay.  Defendants' Motion to Stay should therefore be granted.

**I.    Penn Will Not Be Prejudiced By A Stay**

    Penn has failed to identify any prejudice that would result from a stay.  Although Penn

claims to have a "general right to timely enforce [its] patent rights," Opposition at 9, that is not a

reason to deny Defendants' motion, as numerous courts have recognized.  "[T]he mere fact of a

delay alone does not constitute prejudice sufficient to deny a request for stay."  *E-Watch, Inc. v.*

*Lorex Canada, Inc.*, No. H-12-331, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013); *see also*

*Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075, 2013 WL 5718460, at *2 (N.D. Ill.

Oct. 1, 2013) (same); *Sorensen v. Black & Decker Corp.*, No. 06–1572, 2007 WL 2696590, at *5

(S.D. Cal. Sept. 10, 2007) (same).  Rather, courts require a party opposing a stay to make

"specific allegations of prejudice."  *NFC Tech, LLC v. HTC America, Inc.*, No. 2:13-cv-1058,

2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (granting stay where Plaintiff has made "no

specific allegations of prejudice other than to claim that any delay in the vindication of patent

rights is prejudicial to a patent owner"); *see also ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d

352, 358 (D. Mass. 2015) (granting stay where Plaintiff "has not identified any actual prejudice

that it would suffer from a stay").  Penn has made no such specific allegations, asserting only a

"general right" to enforce its patents.

Moreover, Penn's new-found concern over the "timely" enforcement of its patent rights,

Opposition at 9, is suspect in light of Penn's delay in filing suit.  Courts have held that even a

one year delay is enough to negate any suggestion of prejudice.  *VirtualAgility Inc. v.

SalesForce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014); *Visual Interactive Phone Concepts, Inc. v.

Samsung Telecomm. Am., LLC*, No. 11–12945, 2012 WL 1049197, at *3 (E.D. Mich. Mar. 28,

2012).  Here, Penn sat on its hands for nearly six years.  Penn does not deny that it has known

about Erbitux and its allegedly infringing use since 2006.  Penn could have filed this lawsuit on

December 1, 2009—the day the '558 patent issued.  It has offered no explanation for its failure

to do so.

Penn's reliance on *Benefit Funding Sys. LLC v. Advance Am., Cash Advance Centers,

Inc.*, Case No. 12-801-LPS, 2013 WL 3296230 (D. Del. June 28, 2013), is misplaced.

Opposition at 9.  Penn notes that, in *Benefit Funding*, the Court found that the plaintiff would be

prejudiced "due to loss of their chosen forum, the possibility of necessary witnesses' memories fading, and negative impact on their ability to license the patent-in-suit." *Benefit Funding*, 2013 WL 3296230, at *2. But Penn has not offered any evidence or argument to suggest that the same factors would be relevant here. Indeed, if Penn had truly been concerned with witnesses' memories, it should not have waited six years to file suit. Penn does not explain how, at this point, another six months would make any difference. To the extent that Penn may have difficulty proving its case because of the passage of time, that is entirely a problem of Penn's own making.

Likewise, it is not enough for Penn simply to assert that a stay would impair its ability to license the '558 patent; it must explain *how* the stay would affect its licensing efforts. *See Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ("SEL claims injuries to its research and licensing reputation and revenue; however, it does not specifically identify how its revenue will be injured if the Court grants Moving Defendants' stay.") (citations and internal quotation marks omitted). At a minimum, Penn must establish that it is actively working to license the patent; otherwise, there can be no prejudice. But Penn does not claim to have licensed the '558 patent. Nor has it alleged—either in its Complaint or in its Opposition to the Motion to Stay—that it has made any efforts to license the '558 patent to anyone other than Eli Lilly.

Even if Penn is trying to license the '558 patent, it is unlikely that a six-month stay would have any impact. The '558 patent is directed to methods of treating individuals having certain types of tumors. *See, e.g.*, '558 patent, claim 1. The potential licensees would mostly be pharmaceutical companies. To the extent that any pharmaceutical company is developing a drug that might be used to practice the claimed methods—and Penn has not identified any such

company—six months is a small fraction of the time typically needed to develop a drug, gain FDA approval, and bring it to market. Therefore, a six-month stay should have no meaningful effect on Penn's licensing efforts.

*Finally*, Penn accuses Defendants of "using the IPR process to gain a tactical advantage in the litigation," but it fails to identify what that tactical advantage might be. Opposition at 8. Instead, Penn criticizes Lilly for waiting "nearly seven months after Penn initiated licensing discussions" before filing its petition for *Inter Partes* Review. But as Penn takes great care to point out, Lilly and Penn entered into a Stand-Still Agreement which "provided that neither party would be prejudiced by entering into licensing discussions." Opposition at 5. Penn cannot use the Stand-Still Agreement as both a sword and a shield—arguing that the Agreement excuses its delay in filing suit while, at the same time, suggesting that Lilly's willingness to negotiate was somehow improper.

Penn relies on *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009), but that case is inapposite. Opposition at 8–9. Penn has mischaracterized the Court's decision; the finding of prejudice was not based solely on the timing of the reexamination petition. Rather, the Court looked at the Defendant's entire course of conduct, including the fact that the Defendant (1) waited four months before moving to stay; (2) refused to schedule a Rule 26(f) conference; (3) failed to serve Initial Disclosures; and (4) ignored the Court's scheduling order. *Esco*, 2009 WL 3078463, at *4. This case is not comparable. Defendants have complied with all of their obligations under the Federal Rules of Civil Procedure, the Local Rules, and this Court's orders and policies. Penn has no cause to complain; it has not alleged any misconduct by Defendants or identified any prejudice that it has suffered—or will suffer if the case is stayed.

**II.      A Stay Would Simplify The Issues**

As Defendants explained in their opening brief, there are serious questions about the validity of the '558 patent as evidenced by the EPO's revocation of Penn's European counterpart patent and Penn's abandonment of subsequent patent applications in the '558 family.  (D.I. 23-2 at 2–3.)  Penn attempts to dismiss these problems as "red herrings," Opposition at 12, but disputes none of the underlying facts.  Most tellingly, Penn has not identified any error of fact or law in the patent examiner's rejection of the '468 application.  It is therefore undisputed that (1) the claims of the '468 application were not patentably distinct from those of the '558 patent; and (2) the claims of the '468 patent were obvious.  Given the manifest similarity of the claims of the '468 application and those of the '558 patent, it is reasonable to expect that the Patent Trial and Appeal Board will, at the very least, institute a review of the '558 patent.  It is highly likely that the PTAB will then find some or all of the challenged claims to be unpatentable.

Penn nonetheless argues that this case should not be stayed because the IPR would not resolve "all issues in the litigation."  Opposition at 13 (quoting *Largan Precision Co v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 WL 794983, at *3 (N.D. Cal. Mar. 1, 2011)).  That is not the relevant standard.  In fact, this Court has expressly rejected such a high bar, recognizing that a stay can simplify the case even though "there may be issues or defenses that cannot be addressed through *inter partes* review."  *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014).  Similarly, in *Dorman Products v. Paccar, Inc.*, this Court held that a stay is appropriate even when the IPR petition did not cover all of the asserted patent claims.  No. 13-6383, 2014 WL 2725964, at *3 (E.D. Pa. June 16, 2014) ("The second factor is whether a stay will simplify the issues in the case. PACCAR argues it will not because Dorman has requested IPR on only two of the three patents involved in this suit. The Court rejects this argument.").  As

long as "there is a significant probability that at least one of the claims subject to review will be cancelled," this factor weighs in favor of a stay. *Destination Maternity*, 12 F. Supp. 3d at 769.

The cases cited by Penn do not apply here, as neither one involved a petition for *inter partes* review. Instead, in both cases, the Defendant had petitioned for **reexamination** of the patent-in-suit, which is a completely different process. *See Largan*, 2011 WL 794983, at *1; *Alps South, LLC v. The Ohio Willow Wood Co.*, No. 8:09-cv-386-T-EAK-MAP, 2010 WL 2465176, at *1 (M.D. Fla. Jun. 16, 2010). Although Penn believes that the same standard for granting a stay should apply to both reexaminations and *inter partes* reviews, Opposition at 13, it has not cited a single case in which a court required an *inter partes* review to resolve "all issues in the litigation." *Id.*

There are good reasons why motions to stay pending reexamination and *inter partes* review are treated differently. As the Court noted in *Largan*, reexamination is an extremely lengthy process taking, on average, five years to complete. *See Largan*, 2011 WL 794983, at *3 (noting that "the average time for completing the reexamination process is sixty months"). *Inter partes* review, on the other hand, is designed to go much more quickly. By statute, the PTAB must decide whether to institute a review within six months of receiving the petition. *See* 35 U.S.C. § 314(b); 37 C.F.R. § 42.107(b). If the PTAB institutes review, it must, in virtually all cases,[1] issue its final written decisions within an additional twelve months. 35 U.S.C. § 316(a)(11). Therefore, while Courts may have legitimate concerns about imposing a lengthy— possibly indefinite—stay pending a reexamination, there are no such concerns for an *inter partes* review.

---

[1] Although the PTAB may, for good cause, extend the time for its final written decision by six months, Defendants are not aware of any instances in which the PTAB has done so. *See* 35 U.S.C. § 316(a)(11).

As Defendants have already shown, Lilly's IPR petition is likely to result in one or more of the claims of the '558 patent being found unpatentable, thereby simplifying the issues this Court will need to address. Moreover, if the PTAB institutes a review, the issues to be considered by this Court will be simplified even if all of the claims of the '558 patent ultimately survive. A final written decision by the PTAB will significantly limit the number of invalidity arguments that Defendants will be able to raise at trial. Defendants will be estopped from raising any ground of invalidity that was raised, or reasonably could have been raised, during the IPR. 35 U.S.C. § 315(e)(2). This Court has also recognized other salutary effects of staying a case pending an IPR:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [review] may encourage a settlement without further involvement of the court, (5) the record of the [review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Destination Maternity*, 12 F. Supp. 3d at 769 (quoting *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99–375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001)) (alterations in original). This factor therefore weighs in favor of a stay.

## III.     The Early Stage Of The Litigation Favors A Stay

Penn does not seriously dispute that this case is in its earliest stages. Instead, it argues that discovery is "progressing." Opposition at 14. Once again, Penn is applying the wrong legal standard. The test, as Penn acknowledges, is "whether discovery is complete and whether a trial date has been set." Opposition at 7. Neither has happened. The fact that the parties have recently exchanged initial disclosures and that Penn has served a first set of interrogatories—and

only after Defendants' filed their Motion to Stay—does not change the fact that this case is only just beginning.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion and stay this case pending resolution of Lilly's petition for *inter partes* review.


Dated: February 8, 2016                     Respectfully submitted.

                                            /s/ Nicole D. Galli
                                            Nicole D. Galli (PA SB #78420)
                                            ndgalli@ndgallilaw.com
                                            Law Offices of N.D. Galli LLC
                                            2 Penn Center Plaza, Suite 910
                                            1500 JFK Blvd.
                                            Philadelphia, PA 19102
                                            Telephone:    215-525-9580
                                            Facsimile:    215-525-9585


                                            George F. Pappas (*pro hac vice*)
                                            gpappas@cov.com
                                            Matthew Kudzin (*pro hac vice*)
                                            mkudzin@cov.com
                                            COVINGTON & BURLING LLP
                                            850 Tenth Street, NW
                                            Washington, DC 20001-4956
                                            Telephone:    202-662-6000
                                            Facsimile:    202-662-6291

                                            *Attorneys for Defendants Eli Lilly and Company, ImClone LLC, and Bristol-Myers Squibb Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 8, 2016, I caused the foregoing *Reply in Support of Defendants' Motion to Stay Pending* Inter Partes *Review* to be filed electronically through the Court's CM/ECF system.  Copies of the foregoing have been served by electronic mail on the following counsel of record:

> Andrew A. Chirls
> achirls@finemanlawfirm.com
> FINEMAN KREKSTEIN & HARRIS, P.C.
> Ten Penn Center
> 1801 Market Street, Suite 1100
> Philadelphia, PA 19103-7513
>
> Jonathan G. Graves
> jgraves@cooley.com
> One Freedom Square
> Reston Town Center
> 11951 Freedom Drive
> Reston, Virginia 20190-5656
>
> DeAnna Allen
> dallen@cooley.com
> 1299 Pennsylvania Ave, NW
> Suite 700
> Washington, DC 20004-2400

Dated:  February 8, 2016                    /s/ Nicole D. Galli
                                                          Nicole D. Galli